UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

**CIVIL ACTION NO. 06-48-JBC**

**TERESA BOYD,**                                                                                            **PLAINTIFF,**

**V.**                                **MEMORANDUM OPINION AND ORDER**

**JO ANNE BARNHART, COMMISSIONER,**
**SOCIAL SECURITY ADMINISTRATION,**                                                    **DEFENDANT.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of her application for Disability Insurance Benefits (DE 9, 10). The court, having reviewed the record and being otherwise sufficiently advised, will grant the plaintiff's motion, deny the defendant's motion, and remand this matter to the Commissioner for further proceedings.

**I. Overview of the Process**

Judicial review of the ALJ's decision to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards. *Brainard v. Sec'y Heath & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The court

does not try the case *de novo* or resolve conflicts in the evidence; it also does not decide questions of credibility. *See id.* Rather, the ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines if one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether or not the claimant can perform past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520.

**II. The ALJ's Determination**

The plaintiff is a forty-two-year-old female with a high-school education and past relevant work experience as a cashier, receptionist, food worker, factory worker, pharmacy technician, hospital cleaner, and maintenance person. AR 16. She alleges disability beginning on December 1, 2002, as a result of bulging discs

in her back, degenerative disc disease, pinched nerves, back and leg pain, and high blood sugar levels.  AR 16-17.  The plaintiff filed a claim for Disability Insurance Benefits ("DIB") on September 8, 2003, which was denied initially and on reconsideration.  AR 16.  At a hearing held on May 6, 2005, Administrative Law Judge ("ALJ") Roger L. Reynolds determined that the plaintiff did not suffer from a disability as defined by the Social Security Act.  At Step 1, the ALJ determined that the plaintiff has not engaged in substantial gainful activity.  At step 2, the ALJ found that the plaintiff's impairments were severe.  The ALJ then determined at Step 4 that, although the plaintiff's impairments did not meet or equal a listing in the Listing of Impairments at Step 3, she could not perform past relevant work.  The ALJ concluded at Step 5, however, that the plaintiff could perform a significant number of other jobs in the national economy at the light and sedentary exertional levels.  AR 22-24.

**III. Legal Analysis**

The plaintiff objects to the ALJ's determination that the plaintiff could work at the light and sedentary exertional levels on two grounds.  First, the plaintiff argues that the ALJ failed to properly credit the opinion of the plaintiff's treating physician, Dr. R. Finley Hendrickson, M.D., that the plaintiff could not even perform work at the sedentary level.  Second, the plaintiff claims that the ALJ made erroneous factual findings regarding her credibility and complaints of pain.  The court will consider these arguments in turn.

*A. The ALJ's Failure to Credit Dr. Hendrickson's Opinion*

Dr. Hendrickson examined the plaintiff in August of 2001 following a back injury she sustained at her job. After the examination, he told the plaintiff not to return to work until September 7, 2001; when he did allow her to work again, he informed her that she could perform light work with no bending or twisting and restricted her to lift no more than 20 pounds. AR 300, 301. Dr. Hendrickson continued to treat the plaintiff during the remainder of 2001, during which time her condition appeared to improve. AR 292-98. An MRI of the plaintiff taken on January 30, 2002, however, revealed that the plaintiff was suffering from degenerative disc disease and a disc bulge. AR 289. The plaintiff's condition worsened during 2002 and 2003, and she was kept from work by Dr. Hendrickson on numerous occasions. AR 269, 279, 283, 285. When the plaintiff was permitted to work, she was limited to light work only. AR 266. Despite numerous referrals to medical specialists, the plaintiff's back pain apparently did not cease; indeed, Dr. Hendrickson opined on at least two occasions that he did not believe he could fully remedy her back pain. AR 230, 258. Finally, on December 29, 2004, Dr. Hendrickson stated in a letter that the plaintiff could not hold a regular job, even at a sedentary exertional level, due to her back pain, panic attacks, and depression. AR 325.

The Commissioner's regulations provide that the Social Security Administration will "give more weight to opinions from [a claimant's] treating

sources . . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(2). The Sixth Circuit has also repeatedly held that the opinions of a treating physician are entitled to significant deference. *See, e.g.*, *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *Farris v. Sec. of Health and Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). If a medical opinion of a treating physician is not contradicted, it is entitled to complete deference. *Walker v. Sec. of Health and Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992); *Cohen v. Sec. of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). If the opinion of a treating source is not accorded controlling weight, the ALJ must consider factors such as the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and specialization of the source in determining the weight to give the opinion. *Wilson*, 378 F.3d at 544. An ALJ must give good reasons for rejecting the opinion of a treating physician. *Id.*; 20 C.F.R. § 404.1527(d)(2).

An ALJ may, however, reject the opinion of a treating physician when that opinion is not sufficiently supported by medical findings. *Walters v. Comm'r*, 127

F.3d 525, 530 (6th Cir. 1997); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993). In the absence of evidence supporting a worsening of a claimant's condition, the Secretary is justified in rejecting the opinion of a treating physician which is contrary to a previously expressed opinion by the same treating physician. *Stanley v. Sec. of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994); *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988).

In his decision, ALJ Reynolds described in detail his reasons for rejecting Dr. Hendrickson's opinion. First, the ALJ stated that there was no objective medical evidence to support his opinion and that it was inconsistent with his May 2004, statement that Ms. Boyd was "doing reasonably well." AR 20. The ALJ also found that Dr. Hendrickson's statement was inconsistent with his earlier opinions that Ms. Boyd could perform light duty work and with assessments made by her other treating physicians. *Id.* Finally, the ALJ found that Dr. Hendrickson's conclusion that the plaintiff's pain and depression were debilitating was incompatible with certain elements of her lifestyle. *Id.*

The court finds that the ALJ failed to show the proper deference to Dr. Hendrickson's medical conclusion that the plaintiff could not work at a sedentary level. Nearly every examination Dr. Hendrickson performed on the plaintiff after her disability allegedly began on December 1, 2002, resulted in a conclusion that the plaintiff was medically unfit for work. For example, on May 15, 2003, Dr. Hendrickson stated that the plaintiff could not "work at this time;" her pain was

described as a ten out of ten. AR 250. On June 6, 2003, he again found her pain was a ten out of ten and suggested that she may require back surgery. AR 245. On November 10, 2003, Dr. Hendrickson restated that Ms. Boyd had a disability and could not work. AR 239. On February 12, 2004, Dr. Hendrickson again reported the plaintiff's back problems and noted that "all we can give her is supportive care." AR 230. Finally, on November 1, 2004, Dr. Hendrickson opined that Ms. Boyd "[could not] do a regular job." AR 332. Contrary to the ALJ's determination, a nearly two-year record of medical treatment by Dr. Hendrickson supports the doctor's conclusion that Ms. Boyd was unable to perform a steady job.

The ALJ also found that Dr. Hendrickson's statement to the effect that the plaintiff was "[d]oing reasonably well" on May 21, 2004, undermined his December 29, 2004, conclusion that she cannot work. This statement, however, must be considered along with the remainder of Dr. Hendrickson's May 21, 2004, report. The next four sentences of that report read as follows: "[The plaintiff is] [s]till having back pain. MRI looks bad. *I think she is disabled due to her back.* She needs to see a back expert." (emphasis added). Instead of contradicting Dr. Hendrickson's December 29, 2004, opinion, his May 21, 2004, assessment of Ms. Boyd actually supports his later conclusion.

The ALJ's finding that Dr. Hendrickson's opinion was inconsistent with his earlier reports that the plaintiff could perform light work also does not merit the

rejection of his ultimate conclusion. The ALJ correctly noted that Dr. Hendrickson frequently allowed the plaintiff to do light work. AR 260, 266, 300. However, the ALJ failed to take into account the gradual worsening of the plaintiff's condition, as documented by Dr. Hendrickson and other physicians.[1] More importantly, each instance in which Dr. Hendrickson approved the plaintiff to perform light work occurred before December 1, 2002, the alleged onset date of the plaintiff's disability. Dr. Hendrickson's determinations that the plaintiff was able to work *before* she was disabled are irrelevant and should not have been used to undermine his opinions as to her ability to work after her alleged disability began.

For similar reasons, the court finds that relevant opinions from other treating physicians do not undermine Dr. Hendrickson's conclusion that the plaintiff is unfit for work. On March 1, 2005, Dr. Phillip A. Tibbs, M.D., performed an MRI on the plaintiff that showed degenerative disc disease with a central bulge. Dr. Tibbs noted that the plaintiff experienced a great deal of pain that was "worse with walking and inhibit[ed] her activities." AR 333. Ms. Boyd was also examined by a number of physicians prior to her alleged onset date of December 1, 2002, some of whom did find that she was able to perform light work as well. AR 139, 260. As these determinations date from before the plaintiff alleges she became disabled, however, they do not contradict Dr. Hendrickson's opinion. Rather, they indicate

---

[1]The court also notes that, even when Dr. Hendrickson approved the plaintiff for light work in 2001 and 2002, he often kept her from work due to her back pain.

that the plaintiff suffered from a back problem for a number of years that only recently worsened to the point that it became debilitating.

Finally, the ALJ found that Dr. Hendrickson's conclusion was contradicted by several aspects of the plaintiff's lifestyle. The ALJ relied particularly on evidence that the plaintiff attended a George Strait concert in February of 2003 and that she cares for a hyperactive seven-year-old child. The plaintiff testified at the hearing, however, that neither of these claims is accurate. Ms. Boyd stated that she suffered an overdose on the night of the George Strait concert; her sister, who did attend the concert, transported the plaintiff to the hospital and incorrectly informed the hospital staff that the plaintiff went to the show as well. AR 349. Ms. Boyd also explicitly testified that her youngest daughter does not suffer from attention deficit disorder. AR 344. She claimed that her daughter has asthma and allergies. *Id.* Moreover, Ms. Boyd testified that she is unable to do a significant amount of work around the house and that her sixteen-year-old daughter "helps take care of her little sister a lot." AR 357-58.

In sum, Dr. Hendrickson's opinion that the plaintiff could not perform a steady job, even at a sedentary level, is supported by his observations during personal examinations of the plaintiff and is consistent with all of his other opinions dating back to when the plaintiff claims she became disabled. All contradictory opinions by Dr. Hendrickson or Ms. Boyd's other treating physicians were rendered before the plaintiff's alleged disability began. Thus, these opinions fail to account

9

for the worsening of her condition at best, or are, at worst, completely irrelevant. Finally, the ALJ's finding that the plaintiff's lifestyle contradicts Dr. Hendrickson's opinion is simply without support in the record.  Since Dr. Hendrickson's opinion was both well-supported and consistent with other evidence in the record, the ALJ erred in rejecting it.

*B. The ALJ's Credibility Assessment*

The ALJ also stated in his decision that he could not "assign full credibility to the claimant's testimony and appearance at the hearing . . . ."  AR 20.  He specifically noted that, although Dr. Hendrickson claimed that the plaintiff's depression was debilitating, she had never been referred for psychological counseling.  *Id.*  He also claimed that the facts that Ms. Boyd was able to attend a George Strait concert and that she cares for her youngest daughter contradict her allegations of disabling pain.  *Id.*  The ALJ also considered it relevant that she had previously worked at a light activity level.  *Id.*  Finally, the ALJ found that, despite the plaintiff's claims of financial hardship, she never applied at a free-help clinic and often purchased cigarettes.  *Id.*

While an ALJ may not ignore a claimant's subjective complaints of pain, an ALJ's determination as to the credibility of a claimant is entitled to great deference. *Williamson v. Sec. of Health and Human Servs.*, 796 F.2d 146, 150 (6th Cir. 1986); *Houston v. Sec. of Health and Human Servs.,* 736 F.2d 365, 367 (6th Cir. 1984).  An ALJ's credibility finding, however, must be supported by substantial

evidence. *King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984); *see also Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so.").

The justifications given by the ALJ for rejecting Ms. Boyd's testimony do not survive scrutiny. First, the plaintiff clearly testified in her hearing that Dr. Hendrickson *did* refer her for psychiatric counseling with Dr. Yahya Allahham, M.D. AR 348-49. The record further shows that Dr. Allahham saw the plaintiff during 2002 and 2003. AR 156-68. Thus, there is no support for the ALJ's finding that Ms. Boyd had never been referred to a psychiatrist. Second, the court has already found that the ALJ's reliance on the plaintiff's attendance at a George Strait concert and care for her daughter is erroneous. *See supra* Part III.A. While the ALJ also determined that the plaintiff's previous ability to perform light work undermines her current disability claim, the court has noted that the evidence on which the ALJ based this finding pre-dates the alleged disability. The degree to which the plaintiff could work before she became disabled has no bearing on the veracity of her present allegations. Even if the ALJ's contention that the plaintiff's cigarette habit undermined her testimony that she lacked the resources to afford medication does have merit, the court finds that, as a whole, the ALJ's credibility determination was not supported by substantial evidence.

### C. Outright Award of Benefits

Having found that the ALJ's decision denying the plaintiff's claim was not

11

supported by substantial evidence, the court must now determine whether it should remand this case to the Commissioner for further consideration or for an award of benefits. If a court determines that substantial evidence does not support such a decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985) ("In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking.").

The court finds that remanding this action for an award of benefits is appropriate. The plaintiff has presented the court with an overwhelming amount of evidence showing that she is completely disabled, and the ALJ's justifications for rejecting her treating physicians' opinions and her own testimony are unsupported in the record. Further, the record contains little or no evidence that would support a finding that the plaintiff is not disabled. Under the circumstances, the court cannot conclude that substantial evidence would support a finding that the plaintiff does not suffer from a disability.

### IV. Conclusion

Because the reasons the ALJ provided for rejecting Dr. Hendrickson's opinion

and determining the plaintiff's testimony was not credible are without support in the record, his finding that the plaintiff can perform a significant number of jobs in the national economy is not supported by substantial evidence.  The court further finds that the evidence of the plaintiff's disability is overwhelming, and an outright award of disability benefits is therefore appropriate.  Accordingly,

**IT IS ORDERED** that the Commissioner's motion for summary judgment (DE 10) is **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (DE 9) is **GRANTED**, the Commissioner's administrative decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner for an award of disability benefits.

Signed on January 20, 2007

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY